UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND
CIVIL ACTION NO. 08-69-JGW

AMELIA EDINGTON, as
Administratrix of the Estate of
Danny W. Edington, Jr., et al.,                      PLAINTIFFS

VS.

MADISON COAL & SUPPLY CO., INC., et al.,              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

The parties have consented to disposition of all pending motions and trial before the undersigned magistrate judge, pursuant to 28 U.S.C. §636(c). Ten motions are currently pending, including three motions for summary judgment, five motions in limine, a motion to strike and a motion for sanctions based upon the alleged spoliation of evidence. The court has reviewed the pending motions, and finds that oral argument is not necessary for the disposition of most of the motions.[1]

**I. Background**

This case involves a tragic accident that occurred on May 26, 2007 on the Ohio River, when a tow boat (M/V Tennessee) operated by Captain James Smiley and a pleasure boat operated by Danny Edington attempted to pass each other. Ultimately, the pleasure craft was swamped by some portion of a wake or wheel wash created by the tow boat. Although most of the passengers on the pleasure craft survived with relatively minor injuries, Danny Edington lost his life.

---

[1] The court invited oral argument on a small number of pending motions at a telephonic hearing conducted on June 3, 2010.

Amelia Edington, as Administratrix of her husband and next friend for Michael Wayne Edington and Danny W. Edington, III, the minor sons of the decedent (collectively "Edington"), filed suit for wrongful death and loss of spousal and parental consortium against Defendant Madison Coal & Supply Company, Inc. Shortly thereafter, Brandy Bear, a friend of the Edingtons who was also aboard the pleasure craft, filed a separate suit against defendant. The two actions were consolidated in light of the identity of facts and issues presented.

The precise type of wave created by the tow boat, and whether the swamping of the pleasure boat was caused by the inexperience and negligent handling of that craft by the decedent or by improper speed of the tow boat, remain in dispute. Despite those disputed issues of material fact, the court can and will resolve several issues of law presented in the pending motions.

**II. Cross-Motions For Partial Summary Judgment**

**A. Defendant Madison Coal & Supply Company's Motion**

The defendant Madison Coal & Supply Company, Inc. has moved for partial summary judgment pursuant to the Limitation of Liability Act, 46 U.S.C. §30501, e*t seq.,* arguing that any liability in this case should be limited to $1.85 million. Doc. 124. Plaintiffs concede that defendant is legally entitled to the limitation of liability requested. Doc. 125, 134. I find the requested limitation to be appropriate under controlling Sixth Circuit case law, and therefore will grant defendant's motion to the extent that it seeks to limit defendant's potential liability in this case to $1.85 million.

**B. Plaintiff Brandy Bear's Motion for Partial Summary Judgment**

Plaintiff Brady Bear, one of the passengers on the ill-fated pleasure craft, has moved for

partial summary judgment on grounds that Captain Smiley violated the Inland Navigation Rules, commonly referred to as the "Rules of the Road." Rule 8 of those rules requires pilots on navigable waters to take action whenever required to avoid collision. The rule states in relevant part that: "If necessary to avoid collision or allow more time to assess the situation, a vessel shall slacken her speed or take all weight off by stopping or reversing her means of propulsion." See 33 U.S.C. §2001 *et seq.*

Defendant first argues that summary judgment cannot be granted because Bear failed to formally plead a cause of action for negligence *per se* in her complaint. Defendant cites no case law, but relies upon general notice pleading requirements. Plaintiff suggests that negligence *per se* need not be separately pleaded, again without citation to case law.

It is unclear whether negligence *per se* must always be pleaded as a separate cause of action in the Sixth Circuit, or whether the alleged rule violation could be used by plaintiffs to help establish a general claim of negligence. It is similarly unclear whether - even if a claim of negligence *per se* should be separately pleaded - amendment should be permitted. *See e.g., Fisher v. Roberts,* 125 F.3d 974 (6th Cir. 1997)(permitting amendment of complaint to assert general claim of negligence); *Jefferson v. Grand Trunk Western R.R. Inc.*, 2009 WL 235647 (E.D. Mich. 2009)(permitting amendment to allege statutory violation); *but see Holler v. Cinemark USA, Inc.*, 185 F. Supp.2d 1242 (D. Kan 2002). In this case, plaintiff Bear does allege in her complaint that Captain Smiley "violated the Rules of the Road applicable to inland river operations," Complaint at ¶17, even though she does not specify which rule was violated. Plaintiff's motion for summary judgment will not be denied merely because plaintiff has failed to plead negligence *per se* as a specific cause of action.

Defendant next argues that the term "collision" as used in Rule 8 should not be interpreted as including the action of a vessel colliding with a wake, but rather, should be restricted to a "collision" between two vessels. Again, I disagree. Language in *Matheny v. Tennessee Valley Authority*, 557 F.3d 311 (6th Cir. 2009) supports the broader definition of "collision" advocated by plaintiffs in this case. Although the language in the Sixth Circuit's opinion is dictum, I nonetheless find it to be persuasive, together with the opinion of the lower court in the same case. By contrast, the case cited by defendant, *Southard v. Lester*, 260 Fed. Appx. 611, 615 (4th Cir. 2008) concerned a rogue wave in open water from a clearly unidentified source - there was no discussion of whether that wave was caused by a passing vessel. The interpretation of the term "collision" is a legal issue, not a factual one. A consideration of other Rules of the Road and this court's review of analogous case law leads to the conclusion that the plaintiff's broader definition of "collision" is the correct one. *Compare, e.g., O'Donnell Transp. Co. v. M/V Maryland Trader*, 228 F. Supp. 903 (S.D.N.Y. 1963)(assuming liability of moving vessel if damage was caused by swell); *Dufrene v. The Diversity*, 163 F. Supp. 331 (E.D. La. 1958), *aff'd*, 272 F.2d 880 (5th Cir. 1959)(damage caused by wave wash).

Nevertheless, disputed issues of material fact preclude the grant of summary judgment on the grounds advocated by plaintiff Bear. One such issue is whether the Edington craft collided with the wake of the M/V Tennessee, or with its wheel wash. Even if the Edington craft was swamped by a wave emanating from M/V Tennessee, it is far from clear whether it was "necessary" for Captain Smiley to reduce the tow boat's speed in order to avoid the collision. The defendant argues that the tow boat was operating at such a speed and in a location in the river that it was not "necessary" for Captain Smiley to reduce his tow boat's speed in order to

safely pass the pleasure craft. The defendant also denies that the pleasure craft was swamped by the wake off the bow of the M/V Tennessee. Rather, defendant contends that the two boats had completed safe passage of each other, and that the accident was caused solely by the decedent's negligence in failing to keep a safe distance and in turning into the tow boat's wheel wash.[2]

### C. Plaintiff Amelia Edington's Motion for Partial Summary Judgment

Plaintiff Amelia Edington also has moved for partial summary judgment, arguing that the "Pennsylvania Rule" should be applied in this case. The Pennsylvania Rule holds that "when a statutory rule intended to prevent an admiralty accident exists and a party violates that statute injuring a party whom the statute was intended to protect, the violating party, to avoid liability, must show that its conduct *could not have been* a cause of the accident." *Pearce v. United States*, 261 F.3d 643, 648 (6th Cir. 2001)(emphasis original, quoting The Pennsylvania, 86 U.S. 125, 1236 (1873)). However, the rule should only be applied if a court determines that the defendant's vessel was navigated in violation of a statute.

The Edington plaintiffs concede that "[a] dispute exists as to whether one and/or both vessel's operators violated various Rules of the Road." Doc. 114 at 3. Nevertheless, the Edington plaintiffs argue that they are entitled to pretrial rulings that Captain Smiley violated both Rule 9 and Rule 34 of the Rules of the Road.

Rule 9(a)(I), involving Narrow Channels, states that a "vessel proceeding along the course of a narrow channel...shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable." Rule 9(a)(ii) refines the first portion of the

---

[2]There is some disagreement concerning the terminology used in the record. The Edington plaintiffs suggest that "wheel wash" from a vessel's stern is a type of "wake," while defendant's experts disagree.

rule by directing a vessel proceeding with a downward current "shall have the right-of-way over an upbound vessel [and] shall propose the manner and place of passage, and shall initiate the maneuvering signals prescribed by Rule 34(a)(I) as appropriate."

Rule 34(a) requires passing vessels to sound their whistles or horns as they approach one another intending to pass. The vessel proceeding down river - in this case, the M/V Tennessee - is required to initiate the signals. While there is no dispute that Captain Smiley did not sound his whistle, there is also no dispute that the Edington craft did not sound its horn.

Contrary to plaintiffs' argument, the court does not find summary judgment to be appropriate concerning the alleged violation of Rule 9. Rule 9 required Captain Smiley to maneuver to the starboard side only as far as "safe and practicable." Captain Smiley testified that he was navigating in the middle of the channel because that was the place that was "safe and practicable" at that point in the river. Factual disputes concerning the location of the tow boat versus the safety of passage at that junction in the river preclude a legal determination at this time of whether or not Captain Smiley was in compliance with Rule 9.

By contrast, the defendant concedes that Captain Smiley technically violated Rule 34 by failing to sound his horn prior to passing the Edington craft port-to-port. However, the defendant asserts that summary judgment concerning the violation of Rule 34 should not be granted because the "ordinary practice" of towboat pilots is "not to sound passing signals with pleasure craft where the pleasure craft is passing at a safe distance." Doc. 156 at 3. Based upon the asserted "practice" as well as defendant's version of how the accident occurred, defendant argues that it has rebutted the presumption of the Pennsylvania rule by demonstrating that Captain Smiley's conduct could not have contributed to the accident.

Based upon the lack of any factual dispute that Captain Smiley did not sound his whistle prior to passing, the Edington plaintiffs' partial motion for summary judgment will be granted to the limited extent that the court finds that the M/V Tennessee violated Rule 34. The defendant's arguments as to the "true cause" of the accident, including the argument that defendant has demonstrated that its technical violation "could not have been a cause" of the accident, must await several factual determinations at trial.

**III. Motions in Limine and Motion to Strike**

**A. Edington Plaintiffs' Motion to Prohibit Economic Testimony**

The Edington plaintiffs have moved this court to prohibit economic testimony concerning any deduction to the decedent's wages for taxes. Damages available to non-seaman parties for deaths within territorial waters are governed by state law. *Yamaha Corp. v. Calhoun,* 516 U.S. 199, 216 (1996). No deduction is generally taken for taxes in cases under Kentucky law. *See e.g., Paducah Area Public Library v. Terry*, 655 S.W.2d 19 (Ky. Ct. App. 1983). Despite some reference to possible jury confusion, the analysis of the court in *Paducah* makes clear that the rule is of general applicability for damage awards in wrongful death cases in Kentucky. Defendant argues that *Paducah* is not binding as a Court of Appeals case, and that other cases are distinguishable on the basis that they involved the risk of jury confusion. However, defendant cites no binding contrary case law, and this court finds *Paducah* to be persuasive to the extent that it speaks to the computation of damages for wrongful death.[3] Therefore, plaintiffs' motion will be granted to the extent that no evidence regarding deductions for income

---

[3]The court expresses no opinion concerning the merits of the "total offset rule" applied by the *Paducah* court, which speaks to a slightly different issue. *See Winston by Winston v. U.S.*, 11 F. Supp.2d 948 (W.D. Ky. 1998)(questioning accuracy of rule).

taxes will be permitted.

### B. Edington Plaintiffs' Motion in Limine to Exclude Testimony Concerning the Weight and Credibility of Witnesses.

The Edington plaintiffs have moved to prohibit defendant's experts from testifying about the weight and credibility to be given to the testimony of plaintiffs' fact witnesses. Two defense experts testified in depositions and/or stated in expert reports that they considered the testimony of the passengers aboard the Edington pleasure craft regarding the size of the wake, position of the vessels, and other pertinent details to be inaccurate and incredible, whereas contrary factual details testified to by Captain Smiley were accepted as accurate and believable. The experts explained that they gave greater weight to the testimony of Captain Smiley because of the other witnesses "were under great emotional distress" which likely affected their perceptions, and because Captain Smiley had greater experience in judging distance and speed. In explaining their conclusions, both experts appeared to make some judgments concerning the plaintiffs' credibility.

Plaintiffs' motion will be granted in part, to the extent that an expert may not directly opine on whether another witness is telling the truth under Rule 702. The experts in question will not be permitted to testify that the plaintiffs' testimony should not be believed merely because plaintiffs were "under great emotional distress." On the other hand, as has been previously noted, this case is to be tried to the bench and not to a jury. Defense experts will not be prohibited from explaining the basis of their calculations, so long as that explanation stays within the realm of their expertise.

### C. Edington Plaintiffs' Motion In Limine To Exclude Testimony Regarding Definition of Collision and Plaintiff Bear's Motion to Strike

The Edington plaintiffs seek a pretrial ruling to preclude defendants from offering testimony in disagreement with the rule that a vessel's wake striking another vessel constitutes a "collision." Captain Smiley and defendant's two experts all offered deposition testimony in which they disagree with the interpretation of Rule 8 as defining "collision" broadly, to include the impact of a vessel's wake with another vessel.

Defendant argues that the definition of "collision" is not settled in the Sixth Circuit, because the language in *Matheny* is only dictum. Defendant claims that because the legal definition is ambiguous, defense witnesses should be permitted to testify as to their understanding of the term "collision." Finally, defendant asserts that precluding defense witnesses from offering such testimony is unnecessary because this case will be tried to the court.

The court will grant the Edington plaintiffs' motion in limine. The term "collision" requires an interpretation of law that would not be illuminated by the factual testimony of defendants' witnesses. Having determined that the legal interpretation of the includes the impact between a wave caused by one vessel with another vessel, this court finds that the proffered testimony should be excluded as contrary to law.

In a related motion, plaintiff Bear asks this court to strike defendant's responsive memorandum in opposition to the Edington Plaintiffs' motion in limine concerning the definition of "collision." The court will deny plaintiff Bear's motion to strike the response from the record as unnecessary. In general, material will be stricken from a court record only when it is "redundant, immaterial, impertinent, or scandalous" and not merely when one party disagrees

with another's legal argument. *See e.g.,* Rule 12, Fed. R. Civ. P.

### D. Edington Plaintiffs' Motion in Limine to Preclude Testimony Relating to "Custom" Contrary to Statute

Plaintiffs seek to prevent defense witnesses from testifying to the practice of navigating tow boats in the center of Mile 374 of the Ohio River, based upon the narrowing of the passage and currents in that area. Plaintiffs further seek to prohibit testimony that tow boats do not normally signal to pleasure craft as is technically required by Rules 9 and 34. Plaintiffs argue that evidence of such customs cannot be admitted because it is in conflict with the Rules of the Road.

The court will deny plaintiffs' motion. Neither party has cited binding Sixth Circuit precedent on the issue, and the cases cited from other jurisdictions do not adhere to a clear rule of exclusion of such evidence.

### E. Edington Plaintiffs' Motion in Limine to Preclude Reconstruction

The defendant seeks to use at trial a video reconstruction depicting the wake and wheel wash of the M/V Tennessee at varying rates of speed. Plaintiffs seek to bar introduction of the video reconstruction of the incident. The accident occurred three years ago and this litigation was initiated two years ago; discovery is now closed. The Edington plaintiffs argue that they would not have sufficient time to re-depose expert witnesses concerning the reconstruction.

Having heard the oral argument of counsel, the court will grant plaintiffs' motion to exclude the creation and/or admission of a reconstructive video as untimely and unduly prejudicial to plaintiffs.

### IV. Motion for Sanctions Based Upon Alleged Spoliation

A key issue in this litigation is the speed of the tow boat. An electronic system called the

CEACT system had the ability to store data from the GPS including the course and speed of the tow boat. Plaintiffs argue that they are entitled to sanctions based upon the spoliation of the electronic data, including the preclusion of any testimony by defense witnesses concerning the M/V Tennessee's course and speed.

Plaintiffs' motion will be denied because there is no evidence that the electronic data was ever created, much less that data was either negligently or deliberately discarded. Defense witnesses testified that although the tow boat had a CEACT system on board, the recording feature of that system must be "activated" in order for the system to record the data. Captain Smiley testified that he did not have the CEACT system activated to record on the date of the accident, and does not normally use the recording feature. No regulation or law required the system to be activated to record. Given that there is no evidence that data was recorded, there is obviously no evidence that any data was erased.

**V. Conclusions and Order**

For the reasons discussed herein, **IT IS ORDERED:**

1. Brandy Bear's Motion for partial summary judgment [Doc. 112] is DENIED, except to the extent that it seeks a pretrial ruling that the legal definition of "collision" encompasses the impact between the wake of a boat and an adjacent vessel;

2. The Edington plaintiffs' motion for partial summary judgment [Doc. 113] is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent that plaintiffs seek a pretrial ruling that defendant violated Rule 34 by failing to sound a whistle while approaching the pleasure craft, but is otherwise denied;

3. Defendant's motion for partial summary judgment [Doc. 124] is GRANTED to the extent that defendant's liability in this action may not exceed $1.85 million dollars;

4. The Edington plaintiffs' motion for sanctions based upon the spoliation of electronic data [Doc. 115] is DENIED;

5. The Edington plaintiffs' motion in limine to exclude expert testimony regarding the weight and credibility of witness testimony [Doc. 117] is GRANTED to the extent that the experts must confine their testimony to the scope of their knowledge and expertise;

6. The Edington plaintiffs' motion in limine to prohibit economic testimony concerning the effect of income taxes [Doc. 122] is GRANTED;

7. The Edington plaintiffs' motion in limine to prohibit fact and expert witnesses from opining as to a definition of "collision" [Doc. 119] is GRANTED;

8. The Edington plaintiffs' motion in limine to preclude defendant from relying upon a "custom" violative of statutory rules [Doc. 120] is DENIED;

9. The Edington plaintiffs' motion in limine to prohibit introduction of a videotaped reconstruction of the incident [Doc. 121] is GRANTED;

10. Brandy Bear's motion to strike the defendant's response in opposition to plaintiffs' motion in limine [Doc. 148] is DENIED.

This the 4th day of June, 2010.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge